ORAL ARGUMENT SCHEDULED FOR FEBRUARY 1, 2023

_____

No. 22-5185

_____

THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

MANDAN, HIDATSA, AND ARIKARA NATION,

*Appellee*

v.

U.S. DEPARTMENT OF THE INTERIOR, *et al*.,

*Appellees*,

STATE OF NORTH DAKOTA,

*Appellant*

_____

*On Appeal from the United States District Court for the District of Columbia in Case No. 1:20-cv-01918-ABJ, Amy Berman Jackson, United States District Judge*

_____

**APPELLANT STATE OF NORTH DAKOTA'S REPLY**

_____

Submitted By:

State of North Dakota
Drew H. Wrigley
Attorney General

Nessa Horewitch Coppinger
D.C. Bar No. 477467
James M. Auslander
D.C. Bar No. 974898
Peter J. Schaumberg
D.C. Bar No. 913202
Special Assistant Attorneys General
1900 N Street, NW Suite 100
Washington, DC 20036
Phone: (202) 789-6009
Fax:    (202) 789-6190
ncoppinger@bdlaw.com
jauslander@bdlaw.com
pschaumberg@bdlaw.com

*Attorneys for Appellant*
*State of North Dakota*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................iv

GLOSSARY ...............................................................................................v

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

ARGUMENT ............................................................................................. 3

I.    The State Retains An Interest in Defending Against the MHA Nation's Claims in This Litigation. ................................................. 3

II.   The Quiet Title Act Is Irrelevant to This Appeal. ....................................... 10

III.  The State Merits At Least Permissive Intervention.................................... 14

CONCLUSION ........................................................................................ 15

Fed. R. App. P. 32(g) CERTIFICATE OF COMPLIANCE ...................................17

CERTIFICATE OF SERVICE ...........................................................................18

# TABLE OF AUTHORITIES

## Cases

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*,
461 U.S. 273 (1983) ................................................................ 11, 12, 13

*Cont'l Res., Inc. v. North Dakota Bd. of Univ. and Sch. Lands, and United States*, No. 1:17-cv-014,
2018 WL 11299577 (D.N.D. Dec. 31, 2018) ...................................13

*Dwen v. United States*,
62 Fed. Cl. 76 (2004) .......................................................................12

*Ill. Bell Tel. Co. v. F.C.C.*,
911 F.2d 776 (D.C. Cir. 1990) ..........................................................6

*Jicarilla Apache Tribe v. Andrus*,
687 F.2d 1324 (10th Cir. 1982) .......................................................12

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ..........................................................5

*Synovus Fin. Corp. v. Bd. of Governors*,
952 F.2d 426 (D.C. Cir 1991) .......................................................5, 6

## Statutory Authorities

28 U.S.C. § 2409a ................................................................... 10, 13

28 U.S.C. § 2410 ..................................................................... 13, 14

## Rules and Regulations

*Fed. R. Civ. P. 24 ............................................................................3, 15

Fed. R. Civ. P. 56 .............................................................................8

*Authorities upon which Appellant North Dakota chiefly relies are marked with asterisks.

## GLOSSARY

**JA**                    Joint Appendix

**MHA Nation**            Mandan, Hidatsa, and Arikara Nation

**QTA**                   Quiet Title Act

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff the MHA Nation and Defendant the U.S. Department of the Interior ("Interior") (collectively, "Appellees") seek to deprive the State of North Dakota (the "State" or "North Dakota") of not only its sovereign and proprietary interests in substantial mineral revenues produced from the historical Missouri Riverbed within the State, but even its opportunity to defend against litigation brought by the MHA Nation against Interior to compel disposition of such revenues to the MHA Nation. The district court cut off the State's previously granted intervention on the ground that Interior's ministerial recordation of trust title in the MHA Nation for the subject riverbed after this litigation was filed extinguished the State's interests in this case. As explained in North Dakota's opening brief (and also supported by Interior's brief on appeal), that conclusion is wrong as a matter of law. North Dakota is entitled to, or at a minimum should be permitted to, continue intervening in this ongoing case, just as since its inception. This Court should reverse and remand with instructions to grant North Dakota intervention.

Appellees try to sidestep and parse the district court's core error, and instead cling to the fictional construct that North Dakota's intervention alone somehow introduces new claims regarding legal title. It does not. The simple facts remain that (1) *the MHA Nation*—not North Dakota—filed this litigation for judicial relief entirely premised on the MHA Nation's unestablished ownership of the Missouri

1

Riverbed and underlying mineral revenues; and (2) North Dakota has an interest in defending against MHA's Nation's litigation claims to those revenues, without asserting any "claim" (or counterclaim) of its own for adjudication in this litigation. The State does not need the district court to "set aside" anything (including the 2022 Anderson M-Opinion) or adjudicate title for the State. Nor is the State "inserting" or "challenging" anything in this case. Rather, *the MHA Nation*—not North Dakota—has put ownership issues in play in this case, and they remain in play as a requisite element of the MHA Nation's extant claims. It suffices that, as the State will show below, the MHA Nation fails to establish its own title to prevail on its own claims.[1]

Similarly, Appellees' reliance on the Quiet Title Act ("QTA") on appeal, as in the district court, is merely a distraction. The MHA Nation does not defend the below ruling except to offer QTA arguments not adopted therein. The district court did not even mention the QTA, much less endorse such arguments, in either of its intervention rulings. The State's opening brief on appeal likewise did not

---

[1] Appellees' briefs also present an erroneous and self-serving narrative on the factual background and merits of the case, omitting for example: (1) the absence of any clear Congressional grant of riverbed title to the MHA Nation, (2) other federal recognitions of State ownership, and (3) that Interior did not even record ministerial trust title until 2022 despite MHA's Nation's assertions of its clear ownership. But in any event, the factual and legal merits of this case are immaterial to this appeal on mere *intervention*, and the State thus will not further address those misstatements here.

mention the QTA because it is irrelevant to the district court's ruling or this intervention appeal.

## ARGUMENT

### I.    THE STATE RETAINS AN INTEREST IN DEFENDING AGAINST THE MHA NATION'S CLAIMS IN THIS LITIGATION.

North Dakota demonstrated in its opening brief that the MHA Nation has not established its ownership of the historical Missouri Riverbed, its minerals, or associated revenues.  Interior concedes as much on appeal, and the MHA Nation does not contend or prove otherwise.  Accordingly, North Dakota retains its "claim[ed] interest relating to the property or transaction that is the subject of the action" for intervention as of right, no less than when the district court first granted intervention to the State.  Fed. R. Civ. P. 24(a)(2).[2]

Interior's efforts to rewrite Rule 24(a)(2) and the district court's ruling are unavailing.  For example, Interior posits that this appeal raises "whether ownership of the historical riverbed and riverbed minerals is 'the subject of the action.'"  *See* Interior Br. at 16, 22.  But under Rule 24(a)(2), the relevant "property" that is the "subject of the action" brought against Interior by the MHA Nation and in which

_____

[2] Rule 24 is contained in the Addendum of the State's opening brief at A-2 to A-3.

the State claims an "interest" is the riverbed land, minerals, and revenues—not "ownership" thereof.[3]

Moreover, contrary to Interior's misconstruction, the district court found that Interior's ministerial recordation of trust title invalidated the State's property interests.  For example, it held that "title is not at issue in either Count III or IV; it was recorded by the Bureau of Indian Affairs on April 4, 2022."  JA172.  It then held that "[a]t various points, the State argues that 'an M-Opinion does not establish legal title' and that, as a result, a dispute remains. . . .  But the Court is not relying on the new M-Opinion as establishing legal title; the recordation accomplished that."  *Id.*  The district court thus reasoned that, because North Dakota purportedly held no interests in the subject property, it had no remaining interest in this case either.  JA173.

Interior's observation of the district court's silence on potential future actions regarding ownership also does not alter the district court's opinion and is irrelevant to the State's intervention in this case.  *See* Interior Br. at 19-20, 40.  As North Dakota explained, the Supreme Court and Rule 24 disfavor "this fragmented

---

[3] Interior discusses and nowhere disputes North Dakota's submitted Declaration of David Shipman regarding the State's interests.  JA160-61; Interior Br. at 8-9.

approach to adjudication." *E.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). Appellees make no mention of *Nuesse.*[4]

Even under Interior's misreading, the district court erred because the MHA Nation's asserted ownership is an "essential predicate" of its remaining counts. *See* Interior Br. at 25 (citing *Synovus Fin. Corp. v. Bd. of Governors of the Fed. Reserve Sys.*, 952 F.2d 426, 434 (D.C. Cir 1991)). The MHA Nation's Count III alleges that:

> The Court should enter an order directing the DOI to provide an accounting to the MHA Nation, *in accordance with the DOI's statutory, regulatory, and trust obligations*, regarding the Missouri Riverbed within the Reservation and the underlying mineral estate, and the production and extraction of minerals from that property, and all royalties *due* and/or collected on such minerals.

JA30, ¶ 83 (emphasis added). The MHA Nation's remaining Count IV seeks to compel Interior "to administer and account *for the MHA Nation's mineral rights* in the lands underlying the Missouri Riverbed within the Reservation" and "to collect, deposit and invest, or pay over funds *owing to the MHA Nation* from the extraction of mineral resources, including oil and gas, from the lands underlying the Missouri Riverbed within the Reservation." JA31-32, ¶ 89(b), (c) (emphasis

---

[4] Interior's suggestion also rings hollow given its disavowal elsewhere of the availability of such future actions (*see* Interior Br. 29 n.6), and given the United States' declination to file its own quiet title action as previously communicated by counsel for Interior to counsel for North Dakota during the course of this litigation. Rather, Interior now apparently prefers to avoid any risk of a judicial determination that the MHA Nation does not hold title to the subject riverbed mineral revenues.

added).  The MHA Nation's prayer for relief contains similar allegations.  JA32, ¶¶ F, G.

Any such purported MHA Nation "rights" or Interior "obligations" are inherently predicated on as-yet-unproven MHA Nation ownership of the riverbed and associated mineral revenues.  Thus, this "matter"—ownership—"has been brought before the [district] court by another party," i.e., the MHA Nation, and North Dakota's intervention is proper under this Court's precedent cited by the district court and Interior.  *See Ill. Bell Tel. Co. v. F.C.C.*, 911 F.2d 776, 786 (D.C. Cir. 1990)[5]; JA171; Interior Br. at 23.

Appellees' own briefing corroborates this essential predicate for MHA's Nation's remaining claims.  Per the MHA Nation, "[t]he Nation's remaining claims seek an accounting of the funds owed to it as owner of the riverbed and to require DOI to collect those funds."  MHA Br. at 15 n.3.  *But it is now undisputed that the MHA Nation has not established that it is the "owner of the riverbed,"* such that it could be "owed" *any* associated "funds."  For its part, Interior states that "[t]he issues to be litigated between the MHA Nation and Interior on Count III are *whether Interior has a duty to account* to the Nation in these circumstances, and, if so, the scope of the information that Interior must provide."  Interior Br. at 33-34

---

[5] As this Court has recognized, the prospective intervenor's arguments in *Illinois Bell* "had absolutely no substantive connection with the issues raised by the petitioner."  *Synovus*, 952 F.2d at 434.  That is not the case here.

(emphasis added).  Likewise, Interior admits that "[a]t a minimum, the district court's discretionary consideration of relief under Count IV would have to take into account the fact that there has been no final determination of title to the Missouri riverbed and riverbed minerals . . . ." *Id.* at 36.  Similarly, the district court's mischaracterization of the MHA Nation's remaining claims as concerning Interior's "trust obligations towards the [MHA Nation]" first requires a finding— which the district court has not yet made—that the MHA Nation indeed has such ownership from which *any* "trust obligations" would flow.  JA172.  Thus, the district court erred in concluding that "title is not at issue in either Count III or IV." JA172.

Appellees cite nothing to obviate or brush aside the need to demonstrate this essential predicate.  Instead, Appellees rely only on their "shared premise," i.e., "that the United States holds title to the Missouri riverbed in trust for the MHA Nation."  *See* Interior Br. at 24.  That proposition is even more problematic given that Interior elsewhere disclaims that same premise and asserts that North Dakota's interests remain.  The MHA Nation cannot be relieved of proving a central element of its remaining claims simply because Appellees feel it "would have complicated resolution of the remaining claims and served no useful purpose."  *See id.* at 19.  Even if now "there is no dispute between the MHA Nation and [Interior]" following machinations during this case (MHA Nation Br. at 15 n.3), the MHA

Nation desires more relief than afforded by Interior and instead maintains its

remaining claims for *judicial* relief.  To be sure, the MHA Nation brought this

litigation in the first place (and continues to pursue it now) due to its displeasure

not only with the now-withdrawn Jorjani M-Opinion, but also with decades of

Interior inaction in the face of the MHA Nation's claimed riverbed ownership.

Appellees cannot engineer relief that simultaneously judicially awards the MHA

Nation the benefits of ownership while obviating a judicial finding of ownership.

Further, Appellees incorrectly equate North Dakota's defense of the MHA

Nation's claims in this case with a nonexistent claim for a judicial determination of

State title.  In reality, the district court need not affirmatively find State ownership

to determine that the MHA Nation has failed to prove its own ownership.  Rather,

it is the MHA Nation's burden to meet the applicable standard for relief on its

claims.  If it again moves for summary judgment as it did on Count I, the MHA

Nation will need to "show[] that there is no genuine dispute as to any material fact

and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  All

North Dakota seeks here is the continued opportunity to defend against those

claims.

Also misplaced are Interior's arguments that the outcome of the litigation

below will not implicate the State's interests.  The MHA Nation seeks an

8

accounting and payment of funds to which it has proven no entitlement.[6]  Property

and funds are singular and finite.  They cannot be allocated twice.  While North

Dakota is gratified that Interior's brief on appeal disputes the merits of the MHA

Nation's remaining claims before the district court, those merits issues are not

before this Court on this intervention appeal, and there is no assurance that Interior

will make the State's arguments before the district court.[7]  To be sure, Interior has

already reversed positions in Solicitor M-Opinions during this case.  And on

information and belief, Interior is already performing accounting activities among

State lessees and paying certain riverbed mineral revenues to MHA Nation.[8]

　　　In sum, the property at issue and relief sought in this litigation implicate

North Dakota's unrefuted sovereign and proprietary interests.  Intervention in

defense of the MHA Nation's claims is not a "procedural maneuver[] intended to

---

[6] Interior opines that it "appears" Count III only "seeks information" in support of other claims, but the MHA Nation has not espoused or justified this view.  *See* Interior Br. at 34.

[7] Interior's new, passing argument on appeal that Interior adequately represents the State's interests to preclude intervention as of right is incorrect and waived.  *See* Interior Br. at 40.  As Interior elsewhere admits, "[n]or did we argue that the Federal Defendants could adequately represent the State's claimed interest in the historical riverbed had title been at issue in the remaining claims."  *Id.* at 16 n.3.

[8] Interior fails to explain why its "abundance of caution" when it "temporarily withheld from disbursement a portion of the revenues it held under certain approved leases to ensure that it did not inadvertently disburse revenues potentially attributable to riverbed minerals" is a one-way ratchet and "no longer necessary" today given still-unadjudicated ownership.  *See id.* at 35-36 n.8.

'end-run'" anything.  *See* Interior Br. at 31.  Considering how the MHA Nation has chosen to frame its claims and to seek judicial recognition and enforcement of those claims, intervention is the participation to which the State is entitled under the applicable Federal Rules and case law and should be granted.

## II.    THE QUIET TITLE ACT IS IRRELEVANT TO THIS APPEAL.

Appellees additionally try to exclude North Dakota based on federal sovereign immunity under the QTA, 28 U.S.C. § 2409a(a).  Indeed, the MHA Nation's appellate brief relies wholly on the QTA.  The MHA Nation raised the same distraction in unavailingly opposing the State's initial intervention in this case,[9] and the district court was not persuaded by both Appellees' QTA arguments against North Dakota's present intervention motion.  Appellees remain wrong.

The State's continued intervention presents no QTA or sovereign immunity issue because the State has neither brought a "civil action" nor asserted any claim at all—much less a quiet title claim against the United States to "adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a).  Indeed, Interior's brief concedes as much: "[t]he State has never sought to file a counterclaim against the MHA Nation or a cross-claim against Interior asserting its adverse claim of title . . . ."  Interior Br. at 17.  Interior

---

[9] MHA Nation's Opp'n to North Dakota's Mot. to Intervene at 5-7, 12, ECF No. 12; *see* Op. & Order, Aug. 27, 2020, ECF No. 15.

previously admitted the same thing to the district court.[10]  Appellees' repeated

contrary assertions that the State's intervention "asserts" or "inserts" or "enlarges"

or "injects" any "additional" issue, presents any "claim" or "challenge" or "suit,"

"seeks to set aside" anything, or requests any "relief" beyond dismissal of the

MHA Nation's own claims, are baseless.  *See, e.g.,* MHA Nation Br. at 18 ("Nor

can the State establish redressability because the district court cannot grant the

relief that it seeks, i.e., a ruling that it owns the riverbed or is entitled to the

royalties as an incident of its ownership."); *id.* at 2, 10, 11, 14, 16; Interior Br. at

13 ("The district court correctly rejected the State's effort to enlarge the issues

being litigated by the parties."); *id.* at 22, 23, 27, 28, 29, 32.

Rather, the State moves to intervene solely in defense of the claims that the

MHA Nation has affirmatively raised and continues to pursue for adjudication.

Interior does not allege sovereign immunity against MHA's Nation's claims.

Appellees cite no case denying intervention on the basis of sovereign immunity,

QTA-based or otherwise, particularly in the absence of affirmative claims by the

intervenor.  Both Appellees' principal reliance on *Block v. North Dakota ex rel.*

*Bd. of Univ. & Sch. Lands* illustrates the point, as that case involved an affirmative

QTA lawsuit by North Dakota against the United States, and found sovereign

---

[10] Interior Opp'n to North Dakota's Suppl. Mot. to Intervene at 9, ECF No. 61
("North Dakota does not raise any claims of its own, including any cross-claim
against the United States asserting its title interest.").

immunity only because that case was untimely filed. 461 U.S. 273, 293 (1983). The instant case's posture is fundamentally different.

That the district court must first adjudicate the ownership element of the MHA Nation's remaining claims does not create immunity and divest its jurisdiction. Were it otherwise, the outcome of the MHA Nation's claims would be a *fait accompli* upon their filing, with no adverse party able to defend against those claims. Again, Appellees cite no authority for their contrary position. Analogously, courts have held that adjudication of title may be a proper threshold issue for judicial resolution where affirmative claims ultimately seek other relief outside the QTA. *E.g.*, *Dwen v. United States*, 62 Fed. Cl. 76, 81 (2004) ("After the passage of the QTA, however, the government frequently argued that the court was divested of jurisdiction to adjudicate takings claims where resolution of a title dispute was subsumed in the determination. That argument, however, has been firmly laid to rest. It is now well-established that the court has jurisdiction to make independent factual determinations of a claimant's specific property interest as a matter of course in adjudicating takings claims.") (citations omitted); *see also Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1345 (10th Cir. 1982) (Indian Tribe may waive sovereign immunity for equitable recoupment counterclaims not seeking an affirmative judgment but arising out of the same transaction and rebutting the Tribe's claim).

Appellees' reliance on the QTA further underscores that the MHA Nation

holds no legal title to the riverbed minerals or associated revenues.  To be sure, the

Supreme Court has firmly held that:

> If a claimant has title to a disputed tract of land, he retains title even if
> his suit to quiet his title is deemed time-barred under § 2409a(f).  A
> dismissal pursuant to § 2409a(f) does not quiet title to the property in
> the United States.  The title dispute remains unresolved.

*Block*, 461 U.S. at 291.  Here, the QTA does not apply, and cannot be invoked as a

ploy to avoid an adverse adjudication against the MHA Nation on the basis of its

own claims in its own lawsuit.

Lastly, though the Court need not reach the issue to grant intervention, 28

U.S.C. § 2409a does not automatically confer sovereign immunity even if the State

*had* brought an affirmative claim to quiet title in revenues from historical Missouri

Riverbed mineral production.  The MHA Nation misstates that "any" lands in

which the United States claims an interest is subject to QTA immunity.  MHA

Nation Br. at 9.  In reality, parties also may sue the United States "to quiet title to .

. . real . . . property on which the United States has or claims a mortgage or other

lien."  28 U.S.C. § 2410(a).  That provision contains no "Indian lands" exception to

waiver of sovereign immunity.  Claims to royalty proceeds from mineral

production qualify as a lien under 28 U.S.C. § 2410 and North Dakota law.  *Cont'l*

*Res., Inc. v. North Dakota Bd. of Univ. and Sch. Lands*, *and United States,* No.

1:17-cv-014, 2018 WL 11299577 at *3-4 (D.N.D. Dec. 31, 2018) ("Because the

13

United States claims an interest in the Disputed Minerals, it cannot argue it does not have or claim a lien on unpaid royalties produced from those minerals. Section 2410's waiver applies.") (denying United States' motion to dismiss on sovereign immunity grounds; case is ongoing on the merits).

Thus, the QTA has no bearing on the State's intervention or this appeal. This Court should again disregard QTA-based arguments against intervention.

## III.     THE STATE MERITS AT LEAST PERMISSIVE INTERVENTION.

The State has demonstrated its right to continue its intervention, just as the district court originally granted in this case.  But at a minimum, the district court abused its discretion in cursorily denying permissive intervention to the State. That is particularly true after the district court's previous grant of intervention, and expression of the "Court's view that the state need not file another motion seeking to intervene in the resolution of Counts III and IV."  JA38-44; JA127.  The MHA Nation's brief on appeal does not even address permissive intervention.  And Interior's appellate brief merely deflects by mislabeling North Dakota's arguments, rather than the district court's ruling, as "cursory."  Interior Br. at 15.

Interior argues that the State only intends to raise one issue that "relates to title (the subject of the dismissed counts), not to Interior's trust obligations (the subject of the remaining counts)."  Interior Br. at 42.  That is incorrect.  First, as it has indicated, the State intends to defend against the MHA Nation's claims, which

are all predicated on nonexistent MHA Nation ownership of riverbed mineral revenues. That is all Rule 24 requires. *See* Fed. R. Civ. P. 24(b)(1)(B) ("a claim or defense that shares with the main action a common question of law or fact"). Second, nothing compels the State to put forth all potential merits arguments when moving to intervene. The State appropriately will respond to arguments that the MHA Nation makes in its opening briefing. Third, any judicially enforceable Interior "trust obligations" here rest on the MHA Nation first demonstrating its ownership in the district court. Finally, the MHA Nation's claims implicate the State's management of oil and gas resources within the State, and at this pre-merits briefing stage it is premature to know if the "MHA Nation's claims or Interior's defenses" in fact will rely on such State authority. The district court abused its discretion in ejecting the sovereign State of North Dakota from this litigation brought by the MHA Nation affecting the State's own property interests.

## CONCLUSION

For the reasons discussed herein and in its opening brief, North Dakota respectfully requests that this Court reverse the district court and remand with instructions for the district court to grant the State intervention as of right, and alternatively permissively, in the pending case before the district court.

Dated: January 13, 2022                    Respectfully submitted,

                                           STATE OF NORTH DAKOTA
                                           DREW H. WRIGLEY

ATTORNEY GENERAL

*/s/ James M. Auslander*

Nessa Horewitch Coppinger
D.C. Bar No. 477467
James M. Auslander
D.C. Bar No. 974898
Peter J. Schaumberg
D.C. Bar No. 913202
Special Assistant Attorneys General
1900 N Street, NW Suite 100
Washington, DC 20036
Phone: (202) 789-6009
Fax:    (202) 789-6190
ncoppinger@bdlaw.com
jauslander@bdlaw.com
pschaumberg@bdlaw.com

*Attorneys for Appellant*
*State of North Dakota*

## FED. R. APP. P. 32(g) CERTIFICATE OF COMPLIANCE

1.       This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 3,754 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(f).

2.       This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

2016 in 14-point, Times New Roman font.

*/s/ James M. Auslander*
James M. Auslander

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2022, I electronically filed the foregoing Appellant State of North Dakota's Reply with the Clerk of Court using ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by ECF.


*/s/ James M. Auslander*
James M. Auslander